LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
William Brown (WB 6828)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
——————————————————————

AKEYA GRIFFITH,
*on behalf of herself and the Class*,

                    Plaintiff,

                    -against-

UNIVERSAL PROTECTION SERVICE, LLC,
ALLIED UNIVERSAL SECURITY SERVICES
d/b/a Allied Universal, and [FNU] JONES,

                    Defendants.

——————————————————————

Case No.:

**CLASS ACTION COMPLAINT**

Jury Trial Demanded

       Plaintiff, AKEYA GRIFFITH ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class Action Complaint against Defendants, UNIVERSAL PROTECTION SERVICE, LLC, ALLIED UNIVERSAL SECURITY SERVICES d/b/a Allied Universal ("Corporate Defendants"), and [FNU] JONES ("Individual Defendant," and collectively with Corporate Defendants, "Defendants") and states as follows:

## <u>INTRODUCTION</u>

       1.     Plaintiff alleges that she was deprived of her statutory rights as a result of Defendants' unlawful discrimination practices under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII"); the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"); and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), and brings this action against Defendants to recover: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.      Plaintiff further alleges, pursuant to the NYLL, that due to Defendants' retaliation against her, she is entitled to recover from Defendants: (1) back and front pay, (2) compensatory damages, (3) punitive damages, and (4) all other penalties the Court deems appropriate.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy because Plaintiff's Title VII claims arise under the laws of the United States and are brought to recover damages for the deprivation of equal rights.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise out of a common nucleus of operative facts with the federal claims are so related to the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States constitution.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 and

42 U.S.C. § 2000e-5(f)(3) because Defendants conduct business in and can be found in this District, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District, the alleged unlawful employment practices were committed in this District, and employment records relevant to such practices are maintained and administered in this District.

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

7.      Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites to her Title VII claims.

8.      On October 1, 2018, Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission (the "EEOC" or the "Commission"), within the required 180 days of the discriminatory event. On April 29, 2019, the EEOC issued the Notice of Right to Sue to Plaintiff, attached hereto as **Exhibit A**.

9.      This action was filed within the required ninety (90) days of the receipt of Plaintiff's Notice of Right to Sue.

## PARTIES

10.      Plaintiff, AKEYA GRIFFITH, is and has been at all relevant times a resident of New York County, New York. Plaintiff was employed by Defendants as a Security Officer from on or around June 21, 2018 until her termination on August 1, 2018.

11.      Corporate Defendant UNIVERSAL PROTECTION SERVICE, LLC ("Universal Protection Service") is a limited liability company organized under the laws of the State of Delaware and is registered to do business in the State of New York, with a service of process address located at 111 Eighth Avenue, New York, NY 10011.

12.      Corporate Defendant ALLIED UNIVERSAL SECURITY SERVICES d/b/a

Allied Universal ("Allied Universal") is a Pennsylvania corporation with its principal executive office located at 161 Washington Street, Suite 600, Conshohocken, PA 19428.

13.     Allied Universal is the parent company of Universal Protection Service, LLC, a wholly owned subsidiary.

14.     Corporate Defendant Allied Universal was formed in August 2016 as the result of a merger between Allied Barton and Universal Services of America. Allied Universal is the largest provider of security services in North America and employs over 140,000 people, with offices located in Alabama (5), Alaska (1), Arizona (5), Arkansas (2), California (39), Colorado (3), Connecticut (3), Delaware (1), Washington, D.C. (1), Florida (16), Georgia (8), Hawaii (1), Idaho (1), Illinois (9), Indiana (2), Iowa (1), Kansas (2), Kentucky (5), Louisiana (4), Maine (1), Maryland (4), Massachusetts (4), Michigan (8), Minnesota (1), Mississippi (1), Missouri (4), Montana (1), Nebraska (1), Nevada (2), New Hampshire (1), New Jersey (7), New Mexico (3), New York (13), North Carolina (10), North Dakota (2), Ohio (6), Oklahoma (2), Oregon (1), Pennsylvania (10), Rhode Island (1), South Carolina (8), Tennessee (8), Texas (17), Utah (1), Virginia (5), Washington (6), West Virginia (2), Wisconsin (3), and Wyoming (2). See attached **Exhibit B**, Allied Universal Office Locations. Defendant Allied Universal's website can be found at http://www.aus.com.

15.     Individual Defendant, [FNU] JONES, was at all relevant times Plaintiff's manager and direct supervisor. Individual Defendant had and exercised control over the terms and conditions of Plaintiff's and Class members' employment. With respect to Plaintiff and Class members, Individual Defendant had and exercised the power to (i) hire and fire employees, (ii) supervise and control their work schedules, (iii) determine their rates and methods of compensation, and (iv) otherwise affect their quality, terms, and conditions of

employment. At all times, employees could complain to Individual Defendant directly regarding any of the terms of their employment, and Individual Defendant would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, raising or lowering their compensation, and terminating them. Individual Defendant directly reprimanded any employee who did not perform his or her duties correctly.

16.     At all relevant times, Defendants were and continue to be an employer within the meaning of Title VII, the New York State Human Rights Law, the New York City Human Rights Law, and the regulations thereunder.

17.     At all relevant times, Allied Universal and Universal Protection Service, LLC met the definition of an "employer" of Plaintiff under the New York Labor Law.

18.     Plaintiff and the putative Class were employed by all Defendants as a single employer.

19.     At all relevant times, Defendants have operated together as a single integrated enterprise in conducting business, including the business practices described in this Complaint. They are interrelated companies that have common ownership, officers, managers, products, services, and corporate purpose.

20.     At all relevant times, the work performed by Plaintiff and Class members was directly essential to the business operated by Defendants.

21.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure

("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to security officers, security guards, security supervisors, security agents, operations assistants, supervisors, security managers, and security professionals) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

23.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.     Plaintiff further brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23 on behalf of a sub-class of Black security officers employed by Defendants that have been subjected to a pattern and practice of race discrimination, and employment policies and practices which have had a continuing, unlawful disparate impact on them and their employment opportunities. All said persons, including Plaintiff, are referred herein as the "Discrimination Subclass."

25.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control and possession of Defendants, there is no doubt that there are more than two hundred (200) members of the Class and at least

fifty (50) members of the Discrimination Subclass.

26.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All Class members were subject to the same corporate practices of Defendants of (i) failing to pay proper wages and overtime premiums due to time-shaving, (ii) failing to provide proper wage statements that were in compliance with the requirements of the New York Labor Law, and (iii) failing to provide proper wage and hour notices to Class members per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

27.     In addition, Discrimination Subclass members were subject to the same discriminatory policy and practice of requiring Black employees to work in facilities located in predominantly Black neighborhoods.  Defendants further paid security officers in Black neighborhoods lower wages in comparison to those who worked in Caucasian or Hispanic neighborhoods.  As a result, members of the Discrimination Subclass were subjected to an unlawful policy whereby they were paid less than non-Black employees solely on the basis of their race.

28.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm

their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including the following:

a.   Whether Defendants employed Plaintiff and Class members within the meaning of the New York Labor Law;

b.   What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c.   At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d.   Whether Defendants properly notified Plaintiff and Class members of their hourly rate and overtime rate;

e.   Whether Defendants failed to properly compensate Class members for all of their hours worked due to a policy of time-shaving;

f.   Whether Defendants paid Class members overtime wages at a proper rate of at least one and one-half times their regular rates of pay for hours worked over 40 in a week;

g.   Whether Defendants provided proper wage and pay rate notices to Plaintiff and Class members with all of the required information under the New York Wage Theft Prevention Act; and

h.   Whether Defendants provided proper wage statements to Plaintiff and Class members which accurately reflected their hours worked as required by the New

York Wage Theft Prevention Act.

32.    There are further common questions of law and fact common to the Discrimination Subclass which predominate over any questions affecting only individual Subclass members, including the following:

a.    Whether Defendants restricted employees' work locations to neighborhoods whose prevailing demographics matched the race of the employee; specifically, whether Black employees were required to work in predominantly Black neighborhoods;

b.    Whether Defendants paid security officers stationed at locations in predominantly Black neighborhoods less than security officers stationed at buildings in predominantly Caucasian and Hispanic neighborhoods;

c.    Whether, as a result of Defendants' policies, Discrimination Subclass members were systematically paid less than Caucasian and Hispanic security officers; and

d.    Whether Defendants' discriminatory policies were willfully implemented with the intent of paying Black employees less than employees of other races.

## STATEMENT OF FACTS

Discrimination Claims

33.    On or about June 21, 2018, Plaintiff AKEYA GRIFFITH was hired by Defendants to work as a Security Officer. Plaintiff's employment was wrongfully terminated by Defendants on or about August 1, 2018.

34.    Upon being hired, Plaintiff was originally stationed to work at a shelter located at 360 East 170th Street, Bronx, NY 10459. While stationed there, Plaintiff was paid $15.50 per hour.

35.    The location of the shelter was in a predominantly Hispanic neighborhood. In or

around July 2018, Plaintiff's direct supervisor, Individual Defendant [FNU] JONES, informed Plaintiff she was being relocated to another building. The reason Defendant JONES gave for the move was because he wanted to move Hispanic employees to sites in predominantly Hispanic neighborhoods and Black employees to sites in predominantly Black neighborhoods. Defendant JONES further stated that it could "cause tension" having a Black security guard in a Hispanic neighborhood.

36.     Later, Plaintiff was informed by Individual Defendant that her pay would be reduced to $13.25 per hour after the relocation to the new site. When Plaintiff asked why she was receiving a pay cut, she was told by Individual Defendant that pay rates varied by work location, and that sites located in Hispanic neighborhoods paid more than sites located in Black neighborhoods.

37.     When Plaintiff complained to Individual Defendant that this new policy was discriminatory, she was told that if she did not like it, she could quit. Shortly after Plaintiff complained of this discriminatory policy to Defendant JONES, one of Defendant JONES's assistants, Mr. Fletcher, approached Plaintiff and told her that Mr. Jones did not want to see her at work again. No reason was provided for her termination.

38.     Furthermore, Plaintiff performed her job duties satisfactorily and had no disciplinary record; therefore, any stated reason for her termination is pre-textual.

39.     Following her termination, Plaintiff spoke with a number of other Black security guards who all reported that they were being relocated to other building sites in Black neighborhoods and that their pay was being reduced. In fact, Plaintiff spoke with at least six other Black employees who all stated that they were subjected to the same policies. However, Plaintiff was the only employee who complained to Defendants.

40.     The non-Black employees who received a higher rate of pay and were offered better positions in predominantly non-Black neighborhoods were not otherwise more qualified for the job than Plaintiff and other Black security guards. There was never a requirement that Plaintiff and other employees speak Spanish, nor were they ever required to speak Spanish as part of their job duties.

41.     Defendants therefore unlawfully discriminated against employees due to their race and color, giving Black or African American employees lower pay than those of other races or colors. Defendants switched Plaintiff to a less desirable and lower paying position because of her race.

42.     Additionally, Defendants retaliated against Plaintiff by firing her for complaining about Defendants' discriminatory employment policies.

43.     Defendants terminated Plaintiff's employment in retaliation for complaining of their policy of discriminating against employees based on their race or color by demoting them, relocating them, and giving them less desirable positions and lower pay. Plaintiff was wrongfully terminated by Defendants on August 1, 2018.

44.     Plaintiff felt humiliated and distraught as a result of Defendants' conduct. After her termination, she suffered severe emotional distress as a result of the incident, including depression, anxiety, a loss of appetite, and insomnia.

45.     The policy of relocating and demoting employees based on their race was companywide and affected numerous employees. Plaintiff and other Black security guards were subjected by Defendants to a discriminatory policy which had no legitimate justification and had adverse effects and impacts on the terms and conditions of their employment.

Wage and Hour Claims

46.     At all relevant times, Defendants paid Plaintiff at a straight-time wage of $15.50/hour for all hours worked. Plaintiff was scheduled to work four days a week from 8:00 a.m. to 4:00 p.m., for a total of 32 hours per week.

47.     Plaintiff was not allowed to leave her post until she briefed the next employee who was taking over her post of what the situation was at the job site. This briefing typically required Plaintiff to remain at the job site for an additional thirty to forty minutes after the end of her scheduled shift.

48.     Throughout her employment, Plaintiff was only compensated for her scheduled hours and was not paid for the time she worked past her scheduled shift. Therefore, Plaintiff worked at least two hours each week which were entirely uncompensated.

49.     Additionally, Plaintiff and Class members suffered from Defendants' policy of automatically and indiscriminately deducting 30 minutes from their time each day for a meal break. However, Plaintiff and Class members were never given any meal breaks and were always required to work through their breaks. In fact, on most days there would only be one Security Officer working at each job site, therefore it was impossible to take a thirty-minute meal break because it would require leaving the job site unattended.

50.     Class members similarly had their pay reduced due to time-shaving, were similarly compensated, and worked similar hours.

51.     Plaintiff was required to sign in and out of work by writing down her hours on a sign-in sheet.

52.     Throughout her employment, Plaintiff was paid by check on a weekly basis.

53.     At all relevant times, Defendants provided deficient wage statements to Plaintiff

which failed to accurately show the number of hours she worked in a given workweek. Class Members received similar fraudulent wage statements due to Defendants' policy of time-shaving.

54.     During her employment, Plaintiff never received a wage notice from Defendants as required by the New York Labor Law.

55.     Defendants knowingly and willfully failed to pay Class members the statutory overtime rate of at least one and one-half times their regular rate of pay for hours worked over forty (40) each workweek.

56.     Defendants knowingly and willfully operated their business with a policy of not paying the proper wages for all hours worked to Plaintiff and Class members due to a policy of time-shaving.

57.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by the New York Labor Law.

58.     Defendants failed to provide proper wage notices to employees pursuant to the requirements of the New York Labor Law.

59.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

60.     Plaintiff realleges and reavers Paragraphs 1 through 59 of this Complaint as if full set forth herein.

61.     Under Title VII, "[i]t shall be unlawful employment practice for an employer

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race, color . . .; or (2) to limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . race, color . . ." 42 U.S.C. § 2000e-2(a)(1) and (a)(2).

62.     Defendants violated Title VII, 42 U.S.C. § 2000e-2(a)(1), by discharging Plaintiff and by discriminating against Plaintiff and other Black employees with respect to their compensation, terms, conditions, and privileges of employment because of their race or color.

63.     Defendants violated Title VII, 42 U.S.C. § 2000e-2(a)(2) by limiting, segregating, and classifying their employees, including Plaintiff, which deprived them of employment opportunities and adversely affected their status as employees because of their race and color.

64.     Under Title VII, "[i]t shall [also] be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 2000e-3(a).

65.     Defendants violated 42 U.S.C. § 2000e-3(a) by discriminating against and firing Plaintiff for opposing their unlawful employment practices.

66.     Plaintiff is an employee and a qualified person within the meaning of Title VII and Defendants are employers under Title VII.

67.     Defendants violated Plaintiff's statutory protected rights under the law by

discriminating against Plaintiff on the basis of her race or color and by terminating her employment in retaliation.

68.     Defendants operated a business that discriminated against Plaintiff in violation of Title VII by subjecting Plaintiff to discrimination and terminating her employment in retaliation for making a complaint to Individual Defendant.

69.     Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Title VII.

70.     As a result of Defendants' discrimination against Plaintiff, Plaintiff sustained injury and suffered stress and economic damages.

71.     Due to Defendants' violation under Title VII of the Civil Rights Act of 1964, based on discrimination on the basis of race and color, Plaintiff is entitled to recover from Defendants: (1) back and front pay, (2) compensatory damages, (3) punitive damages, and (4) attorneys' and expert fees and costs.

## COUNT II

### VIOLATION OF THE NEW YORK LABOR LAW
### ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

72.     Plaintiff realleges and reavers Paragraphs 1 through 71 of this Class Action Complaint as if fully set forth herein.

73.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

74.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them wages, including overtime compensation at the statutory rate of time-and-one-half, for all hours worked due to Defendants' policy of time-shaving.

75.     Defendants knowingly and willfully failed to provide proper wage statements to

Plaintiff and Class members with every wage payment as required by New York Labor Law § 195(3).

76.    Defendants knowingly and willfully failed to provide proper wage and pay rate notices to Plaintiff and Class members as required by New York Labor Law § 195(1).

77.    Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in violation of the New York Labor Law.

78.    Due to Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages due to time-shaving, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the New York Labor Law.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

79.    Plaintiff realleges and reavers Paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of an individual's race or color.

81.    Plaintiff is an employee and a qualified person within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

82.    Defendants operated a business that willfully violated the NYSHRL by subjecting Plaintiff to discrimination on the basis of her race and color and by firing Plaintiff in retaliation for making a complaint to Individual Defendant.

83.     Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under the New York Executive Law § 296.

84.     As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injuries, including economic damages and past and future physical and emotional distress.

85.     Due to Defendants' violations under the New York State Human Rights Law, Plaintiff is entitled to recover from Defendants: (1) back and front pay, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## COUNT IV

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

86.     Plaintiff realleges and reavers Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of an individual's race or color.

88.     Plaintiff is an employee and a qualified person within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

89.     Defendants willfully violated the New York City Human Rights Law, as amended, by operating a business that discriminated against Plaintiff on the basis of her race and color and by firing Plaintiff in retaliation for making a complaint to Individual Defendant.

90.     Defendants violated Plaintiff's statutory protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by engaging in discriminatory employment practices based on her race and color.

91.     Defendants' conduct was intentional, malicious, willful, or in reckless disregard

of Plaintiff's protected rights under the NYCHRL.

92.     As a result of Defendants' unlawful employment practices, Plaintiff sustained injury, including economic damages, past and future emotional distress, and the costs of bringing this action.

93.     At all relevant times, Defendants operated a business in New York City that discriminated against Plaintiff on the basis of her race and color, in violation of the NYCHRL.

94.     As a result of Defendants' unlawful employment practices, Plaintiff sustained injuries, including economic damages, past and future physical and emotional distress, and the costs of bringing this action.

95.     Due to Defendants' violations under the New York City Human Rights Law, as amended, based on discrimination on the basis of race and color, Plaintiff is entitled to recover from Defendants: (1) back and front pay, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## COUNT V

## RETALIATION UNDER THE NEW YORK LABOR LAW

96.     Plaintiff realleges and reavers Paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.     Defendants willfully violated the New York Labor Law by discriminating against Plaintiff and retaliating against Plaintiff by discharging her for making a complaint about Defendants' labor law violations and unlawful discrimination and exercising her protected rights under the New York Labor Law.

98.     Defendants' actions constituted a violation of New York Labor Law § 215.

99.     Plaintiff suffered economic losses and emotional and mental distress from

Defendants' retaliatory actions and having her employment terminated.

100.    Due to Defendants' unlawful retaliation under the New York Labor Law, Plaintiff is entitled to recover from Defendants: (1) back and front pay, (2) compensatory damages, (3) punitive damages, and (4) all other penalties the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and others similarly situated, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under Title VII of the Civil Rights Act of 1964; the New York State Human Rights Law; and the New York City Human Rights Law;

b.  A declaratory judgment that the practices complained of herein are unlawful under the New York Labor Law;

c.  An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

d.  An award of unpaid wages, including those at the overtime premium rate, due under the NYLL as a result of Defendants' policy of time-shaving;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful violations of the NYLL;

f.  An award of back pay accrued and front pay accruing as a result of the loss of work hours caused by the unlawful policies and practices alleged herein;

g.  An award of compensatory damages for her physical and emotional suffering as a

result of Defendants' unlawful discriminatory practices, pursuant to the NYSHRL and NYCHRL;

h.  An award of back and front pay, compensatory damages, and punitive damages due under Title VII of the Civil Rights Act of 1964;

i.  An award of back and front pay, compensatory damages, and punitive damages due under the New York State Human Rights Law;

j.  An award of back and front pay, compensatory damages, and punitive damages due under the New York City Human Rights Law;

k.  An award of back and front pay, compensatory damages, and punitive damages for Defendants' unlawful retaliation under the New York Labor Law;

l.  An award of prejudgment and postjudgment interest, and costs and expenses of this action together with reasonable attorneys' and expert fees;

m.  An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

n.  Designation of this action as a class action pursuant to F.R.C.P. 23;

o.  Designation of Plaintiff as Representative of the Class; and

p.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and others similarly situated, demands a trial by jury on all issues so triable as of right by jury.


Dated: New York, New York
       July 25, 2019

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
William Brown (WB 6828)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

By:  */s/ C.K. Lee*
     C.K. Lee (CL 4086)